UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS J. TUDISCO,

                                Plaintiff,

                        -vs-

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

DECISION AND ORDER

15-CV-6627-CJS

_____

## INTRODUCTION

**Siragusa, J.** Before the Court, in a Social Security Action filed by Thomas J. Tudisco ("Plaintiff") against the Commissioner of Social Security ("Defendant"), is Plaintiff's motion for judgment on the pleadings, [ECF. No. 7](), and Defendant's cross-motion for judgment on the pleadings, [ECF No. 11](). For the reasons stated below, Plaintiff's motion is granted and Defendant's cross-motion is denied.

## BACKGROUND

*Factual Background*

Plaintiff filed for disability insurance benefits on May 24, 2012, stating he was disabled beginning October 1, 2009, as a result of the following: a back injury; sleep apnea; high blood pressure; anxiety; and depression. Plaintiff worked thirty-four years in maintenance and construction until 2006. R. 39–40. In 2006, the company for which Plaintiff worked encountered financial problems and he was subsequently laid off. R. 40–41. Plaintiff then began working for himself preparing tax returns. He worked full-time during tax season (January through April) from 2010 through 2012. R. 17, referring to R. 41–42, 232–37. During this time, he worked between 40 and 80 hours a week. *Id*.

In 2012, Plaintiff sold his business to Neubart Financial services for $60,000, $45,000 of which was paid for Plaintiff's client list. R. 296–97. After the sale in 2012, Plaintiff remained an employee of the company, working only part time due to back pain. R. 47–49.

*Medical Opinions*

Plaintiff suffered from a mild loss of disc space in his lower lumbar spine at L3-4, a moderate loss of disc height at L5-S1, and a moderate to severe loss of disc height at L4-5 with anterior spurring noted. R. 323.

Dr. Jeffery Liberman referred Plaintiff for a steroid injection on November 2, 2009. R. 426. On December 10, 2009, Plaintiff was seen by Dr. Morris at the Rochester Brain and Spine Institute, who recommended that Plaintiff undergo a laser discectomy to alleviate displacement of lumbar intervertebral discs. R. 310, 360.[1] Plaintiff underwent three surgeries regarding lumbar disc issues: (1) on April 15, 2010, Dr. Morris performed a lumbar laminotomy with foraminotomy, and decompression, R. 384–85; (2) on May 5, 2010, Plaintiff underwent his second lumbar laminotomy with foraminotomy, decompression, and a lumbar discectomy, R. 386–88; and (3) On December 9, 2010, Plaintiff underwent his third lumbar laminotomy with foraminotomy, a partial facetecomoy, and decompression. R. 393.

Following the back surgeries, on March 14, 2012, Plaintiff saw Dr. William Capicotto, an orthopedic and spinal surgeon, for pain in his lower back and weakness in his legs. R.404–08. Plaintiff's pain increased with activity and was intensified by walking for extended periods of time. *Id*. Dr. Capicotto diagnosed Plaintiff with lumbar disc herniation, and concluded that Plaintiff's disability was "marked, permanent." R. 408. Dr. Capicotto in-

---

[1] Although the Record states that Dr. Morris was the examining physician, the report is signed by "Davis, Robert" on December 10, 2009. The document does not contain any explanation as to why it is not signed by Dr. Morris, or who Robert Davis is. R. 361.

2

formed Plaintiff that "further surgery in my hands would involve at a minimum laminectomy at one or two levels and probably a fusion." R. 408–09. Dr. Capicotto noted that Plaintiff "has had profound changes in his lumbar spine that may require a few surgeries. At this specific point in time, his condition is stable." R. 409.

Plaintiff saw Dr. Capicotto numerous times for worsening lower back pain: June 28, 2012, January 31, 2013, June 26 2013, July 31, 2013, and February 11, 2014. R. 410, 469–73, 465-67, 458–63, 475–79. Dr. Capicotto's original medical opinion did not change; he consistently found Plaintiff permanently disabled. *Id*. In his report to the Workers' Compensation Board dated February 11, 2014, Dr. Capicotto noted that Plaintiff's pain level was "at 6/10 on the pain scale." R. 475. In his comments, the doctor wrote the following:

> It has been discussed with Thomas over the last several visits his condition, the fact that his condition has been worsening and that he will ultimately need to undergo a multilevel spinal fusion with decompression. He really is trying to avoid this for as long as possible although he does realize it is in his future. He has been working on a part time basis which has gotten more and more difficult. At this time, we have advised him to pursue looking into Social Security Disability benefits because he really is unable to continue In the work force at any capacity.

R. 477–78.

Plaintiff saw Dr. Liberman regularly to monitor depression and anxiety. R. 487–88. His anxiety and depression were controlled with Cymbalta in 2011. R. *Id*. Plaintiff's medication was switched on November 19, 2012, because the Cymbalta was not effective. R. 521. After adjusting the dosage of medication, Dr. Liberman noted Plaintiff's depression had stabilized. R. 537.

The Commissioner requested an examination concerning Plaintiff's depression and anxiety. On September 14, 2012, consultative examiner Dr. Christine Ransom examined Plaintiff and noted his attention and concentration were moderately impaired by his depres-

3

sion and anxiety. R. 430. Dr. Ransom concluded Plaintiff has a moderate difficulty dealing with stress and performing complex tasks. *Id*. The ALJ noted in her decision that a state agency medical consultant, Dr. E. Kamin, concluded Plaintiff had moderate restrictions with concentration, pace, and persistence. R. 21, 61, 64.

The Commissioner also requested that Plaintiff receive an internal medicine exam. On September 14, 2012, Plaintiff saw consultative examiner Dr. Harbinder Toor. R. 434–37. In his report, Dr. Toor noted that Plaintiff had difficulty walking and getting on the examination table. R. 435. Dr. Toor reviewed X-rays of Plaintiff's back and noted degenerative joint disease. R. 438. Dr. Toor diagnosed a history of lumbar disc disease, hypertension, high cholesterol, depression, anxiety, and sleep apnea. R. 437. Dr. Toor concluded Plaintiff had moderate to severe limitations for standing, walking, squatting, bending, and lifting; in conjunction with moderate limitation on sitting for long periods of time. *Id*.

*Procedural History*

On May 24, 2012, Plaintiff filed a Title II[2] application for disability insurance benefits beginning in October 1, 2009. R. 15. The claim was initially denied on September 27, 2012. *Id*. After being denied, Plaintiff submitted a timely written request to appear before an Administrative Law Judge ("ALJ") In that regard, a hearing was held on March 14, 2014. *Id*. On April 29, 2014, the ALJ issued a written opinion concluding Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. R. 30.

*The ALJ's Decision*

The ALJ found Plaintiff engaged in a substantial gainful activity ("SGA") during tax season (January through April) from 2010 through 2014 based on Plaintiff's work as a self-

---

[2] Social Security Act of 1935, as amended, Title II, Federal Old-Age, Survivors, and Disability Insurance Benefits, 42 U.S.C. §§ 401–33.

4

employed tax preparer. R. 17. She found Plaintiff's work supplied a substantial income and that he provided significant services to the business. *Id*. The ALJ concluded that Plaintiff was not disabled pursuant to 20 CFR Part 404, Subpart P, Appendix 1. R. 22.

## LEGAL STANDARD

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the statute directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case *de novo*). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating a plaintiff's claim. *Seil v. Colvin*, No. 15-CV-6275-CJS, 2016 U.S. Dist. LEXIS 34681, 2016 WL 1054759 (W.D.N.Y. Mar. 17, 2016).

The Social Security Administration has designed a five step procedure for evaluating disability claims. 20 C.F.R. § 404.1520. That procedure is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience…. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).

5

## DISCUSSION

Plaintiff first argues that the ALJ incorrectly relied upon "joint" tax returns, which included his wife's income, when determining he was currently engaged in Substantial Gainful Activity ("SGA"). Second, Plaintiff argues the ALJ failed to give appropriate weight to medical opinions in the Record. Third, Plaintiff argues the ALJ improperly sought and admitted evidence of his work as a tax preparation specialist from the Internet when determining his creditability.

### *Substantial Gainful Activity*

An activity qualifies as SGA if it requires mental or physical work and it is completed for pay or profit. The Commissioner's regulation states in pertinent part as follows:

> Substantial gainful activity is work activity that is both substantial and gainful:
>
> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 404.1572(a)–(b). The Commissioner employs three tests to determine SGA for a self-employed individual pursuant to 20 C.F.R. § 404.1575(a). For self-employed claimants, the Commissioner lists the following tests:

> (i) *Test one:* You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
>
> (ii) *Test Two:* You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(iii) *Test Three:* You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2)(i)–(iii). When calculating "countable income," the Commissioner, deducts the claimant's "normal business expenses" from "gross income to determine net income." *Id*. at § 404.1575(c).

In the present case, the ALJ does not specifically which test she used in making her SGA determination. It appears, though, she used test one to calculate SGA. Plaintiff does not challenge the ALJ's determination that he rendered significant services to the business. However, Plaintiff does challenge the ALJ's calculation of substantial income under test one. Substantial income for a self-employed individual is measured by net income. 20 C.F.R. § 404.1575(c)(1). The net income of a claimant is then averaged over 12 months. *Id.* If the averaged amount is larger than the SGA earnings calculation performed by the ALJ then the claimant engaged in SGA. *Id*.

The ALJ found Plaintiff's income by looking at joint spousal income tax forms R. 18. She found Plaintiff to have an income of

| Year | Income |
| --- | --- |
| 2010 | $5,627 |
| 2011 | $8,167 |
| 2012 | $8,175 |

*Id*. The SGA Earnings Guideline sets forth amounts of monthly net income that would indicate SGA. *Id*. For the years within Plaintiff's claimed disability, the income levels were $1,000 in 2010–11, and $1,010 in 2012. *Id*. Test one is designed to examine income a claimant received from his business. 20 C.F.R. § 404.1575(a)(2)(i). The only relevant income pursuant to determining if a claimant's income is "substantial" is the claimant's. *See*

§ 404.1575(c)(1) ("we deduct the reasonable value of any significant amount of unpaid help furnished by your spouse"). Including spousal or household income in test one is inaccurate and is not reflective of the income made by a claimant. Thus, the ALJ's examination of Plaintiff's income was erroneous because it incorrectly included income from both Plaintiff and his spouse.

According to the Record, the highest earnings Plaintiff made during this time from his tax preparation business were $7,817. R. 174. Averaged across twelve months, his income was $651.41 per month, far below the $1,000 per month threshold for SGA for 2010. *Id*; *See* 20 C.F.R. § 404.1574; Substantial Gainful Activity https://www.ssa.gov/oact/cola/sga.html (last visited June 15, 2017). Therefore, the Court finds the ALJ's reliance on joint spousal income to determine SGA was improper. Since test one showed that Plaintiff did not engage in SGA, the ALJ should have applied tests two and three.

Based on the evidence in the Record, it is possible SGA could be found under test two. Under test two, SGA occurs when "work activity... is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood." *See* 20 C.F.R. § 404.1575(a)(2)(ii). Plaintiff worked from 40 to 80 hours a week during tax season from 2009 through the sale of his company in 2012, and he attended annual tax conventions to stay up to date on changes in tax law. R. 17, 42. These are comparable to an unimpaired individual. Additionally, the value of his company at the time of sale in 2012 indicates Plaintiff had significant business output; Plaintiff sold his business for $60,000.R. 296-97. Plaintiff's work activities during a period of disability, in conjunction with the significant value of the company at the time of sale, may indicate Plaintiff's business could meet the requirements of SGA.

The evidence in the Record is insufficient to properly conduct test three. Under test three, SGA occurs when "work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing." *See* 20 C.F.R. § 404.1575(a)(2)(iii).

The Court concludes the ALJ erroneously considered joint income when conducting test one, and failed to conduct tests two and three. The ALJ is directed to develop the Record to determine if Plaintiff's work activity is "clearly worth the amount shown in § 404.1574(b) (2)." *Id*. The Record must contain evidence indicating the value of Plaintiff's work activities in conjunction with relevant information about the tax preparation business for test three to be conducted properly.

*Consultative Examiners' Mental RFC*

The Court cannot "accept an unreasoned rejection of all the medical evidence in a claimant's favor." *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983). Although not all portions of medical evidence must be explicitly reconciled, the ALJ must have substantial evidentiary support when she summarily rejects all consultative examiners' medical opinions. *Id*.

The ALJ correctly rejected consultative examiner Dr. Ransom. Dr. Ransom's conclusion that Plaintiff had a moderate impairment with concentration, and concentration resulting from depression and anxiety was inconsistent with the more recent opinion of Dr. Liberman and Plaintiff's work activities. R. 430 & 41–42, 232–37. Plaintiff's treating physician, Dr. Liberman, clearly indicated Plaintiff, who had suffered from depression, was stable at the time of the ALJ's inquiry in April 2014. R. 483–549. Additionally, Plaintiff's extensive work as a tax preparer is inconsistent with Dr. Ransom's conclusion that Plaintiff has difficulty with

9

simple calculations and serial threes. Plaintiff's activities of daily living ("ADL") also indicate mental stability throughout the time he was being treated by Dr. Liberman. R. 21. Therefore, Dr. Ransom's opinion is inconsistent with Dr. Liberman's more recent treatment notes and Plaintiff's work activities. *Id*.

The ALJ also rejected medical consultant Dr. E. Kamin who concluded Plaintiff suffered from "restrictions in concentration persistence and pace. R. 64–65. The ALJ found Dr. Kamin's conclusion "to be inconsistent with his ADLs and substantial work activity." R. 21–22. This conclusion is supported by substantial evidence in the Record, R.21.

*RFC Physical*

The ALJ erred in rejecting the opinion of consultative examiner Harbinder Toor, M.D., who found Plaintiff to have "moderate to severe limitations" when walking or standing and "moderate limitations" when sitting or balancing. R. 28. The ALJ found Dr. Toor's opinion to be vague and unsupported by the Record; she cited certain measurement's from Dr. Toor's own notes to suggest he relied too heavily on Plaintiff's subjective allegations. Additionally, the ALJ found the Record indicates Plaintiff's "intact ambulation, strength, and sensation" is inconsistent with Dr. Toor's findings.

Her rejection of Dr. Toor's determination is based on her lay conclusion that because Dr. Toor found that Plaintiff "revealed a normal gait, intact strength and sensation throughout the body, and a full range of motion of the extremities, despite lumbosacral tenderness and reduced lumbar extension," Plaintiff retained the RFC for a full range of sedentary work. R. 28. In this respect, the ALJ substituted her own "medical expertise" for that of the examining doctor. This is impermissible. *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *accord Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *see also Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("reevaluating a physi-

cians medical tests anew and coming to a different conclusion without supporting expert testimony is an improper substitution of the ALJ's judgments for those of a physician"). If the ALJ believed that Dr. Toor's conclusion, that Plaintiff had "moderate to severe limitation for standing, walking, squatting, bending, and lifting," and "moderate limitation for sitting for a long time," R. 437, was contradicted by his examination, she should have asked Dr. Toor to clarify pursuant to the ALJ's duty to develop the record. 20 C.F.R. § 404.1512(b)(1). The Court directs the ALJ develop the Record and clarify any ambiguity in the medical evidence.

*Treating Physicians*

Generally, the Commissioner's rules direct that ALJs give treating physicians greater weight than other sources of medical information. A treating physician is able to present the ALJ with medical evaluations that are unrivaled in their depth and personalization. 20 C.F.R. § 404.1527(c)(2). An ALJ is directed to give "controlling weight" to a treating physician's medical opinion if the opinion is supported by diagnostic medical evaluations and is not inconsistent with other substantial evidence on the record. *Id*. However, the Commissioner's rule states that when an ALJ,

> do[es] not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

*Id.* The Commissioner employs several factors when evaluating the weight to give a medical opinion from a treating physician pursuant to 20 C.F.R. § 404.1527(c).[3] An ALJ must consider the following factors:

(i) the frequency of examination and the length, nature and extent of the

---

[3] Although Plaintiff cited to 20 C.F.R. § 404.1527(d)(2), it appears he meant to cite to 20 C.F.R. § 404.1527(c)(2).

>    treatment relationship;
>
> (ii)   the evidence in support of the treating physician's opinion;
>
> (iii)  the consistency of the opinion with the Record as a whole;
>
> (iv)   whether the opinion is from a specialist;
>
> (v)    other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The Commissioner has essentially adopted the holding of *Halloran* in 20 C.F.R. § 404.1527(c). An ALJ does not need to explicitly apply each factor contained in § 404.1527(c) and the list is not exhaustive, but the ALJ's decision must provide a good reason for the weight given to any treating physician's opinions. *Wettlaufer v. Colvin*, 203 F. Supp. 3d 266, 278 (W.D.N.Y. 2016)

In the present case, the ALJ gave "little weight" to treating physician Dr. Capicotto. R. 28. It is well settled that an ALJ cannot

> arbitrarily substitute his own judgment for competent medical opinion.... While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.

*McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *accord Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). In this case, the ALJ did precisely that: substituted her own lay opinion for that of the treating physician's. In her decision, the ALJ wrote:

> Based upon the claimant's demonstrations of an intact gait, strength, and sensation even before his 2010 surgeries (Ex. 1F-3F), and upon his improved functioning after the surgeries, including an improved range of motion of the back and extremities (Ex. 3F, 5F, 5F, 9F, I lF, 12F, 13F, 16F), I conclude that the claimant has been capable of, at the very minimum, sedentary work.

R. 27.

The ALJ gave three reasons why she rejected the medical opinion of treating physician Dr. Capicotto. R. 28–29. First, the ALJ remarked that Dr. Capicotto's examinations "revealed a normal gait, intact strength and sensation throughout the body, and a full range of motion of the extremities, despite lumbosacral tenderness and reduced lumbar extension." R. 28 (citations omitted). Second, the ALJ found Dr. Capicotto's opinion, which was that Plaintiff had "'marked, permanent' disability," was inconsistent with the doctor's examination findings. *Id*. Third, the ALJ described the phrase Dr. Capicotto used, that Plaintiff had a "'marked, permanent' disability," as vague and "intended for a finding of worker's compensation," not indicative of "specific functional limitations." R. 28–29.

The ALJ gave selective emphasis to Dr. Capicotto's March 14, 2012, letter report. R. 28. In the letter, Dr. Capicotto restated Plaintiff's history of lower back pain, beginning with his injury on January 21, 1998, when Plaintiff tried to move a 400 pound 55 gallon drum filled with water. R. 404. Dr. Capicotto noted that "[o]ver time, [Plaintiff] underwent chiropractic care, physical therapy at different times with some relief, he has used a back brace, he had acupuncture back in 2002 and has used a TENS[4] unit." R. 404. Nevertheless, Dr. Capicotto related in the same letter that Plaintiff's "low back pain is constant in nature," is exacerbated by prolonged walking, bending, lifting, wakes him at night, and diminishes only with "ice, medication, rest, change of position and pool exercises…." R. 405. The list of medications in the letter includes Oxycodone HCL, "a powerful medication used to alleviate severe pain…." *United States v. Ilayayev*, 800 F. Supp. 2d 417, 419 (E.D.N.Y. 2011). Further, Dr. Capicotto concluded in his March 14, 2012, report that Plaintiff "has profound changes in his lumbar spine that may require a few surgeries." R. 405, 408–09. If the ALJ deter-

---

[4] "Transcutaneous Electrical Nerve Stimulator." *Stephenson v. Colvin*, No. 14-CV-8132 (RLE), 2016 WL 153091, at *4 (S.D.N.Y. Jan. 12, 2016).

13

mined that Dr. Capicotto's terms "'marked, permanent' disability," were vague and indicative of a workers compensation claim, rendering them useless, she had a duty to seek clarification from Dr. Capicotto pursuant to her duty to develop the record. *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (because of "the essentially non-adversarial nature of a benefits proceeding: the Secretary is not represented, and the ALJ, unlike a judge in a trial, must himself affirmatively develop the record."). Therefore, the Court concludes the ALJ failed to comply with the Commissioner's regulations in weighing the medical evidence.

*Plaintiff's Credibility*

The Commissioner requires an ALJ to evaluate all symptoms including pain to properly determine if a claimant is disabled. 20 C.F.R. § 404.1529(a). In determining the severity of an impairment based on subjective symptoms such as pain, an ALJ must consider all relevant factors and non-medical information. *Id*. at § 404.1529(c)(3). Relevant factors for an ALJ to consider include a claimant's daily activates, location and intensity of symptoms, and aggravating or alleviating factors. *Id.* All symptoms and relevant factors must be evaluated by an ALJ to properly determine the extent to which pain and other debilitating factors affect a claimant's ability perform work duties. 20 C.F.R. § 404.1529(c)(3).

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such

14

as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

Here, the ALJ incorrectly weighed the medical evidence when determining Plaintiff's credibility. Although the ALJ found that Plaintiff's medically determinable impairments in his lower lumbar region could reasonably cause his alleged symptoms, such as severe back pain, the ALJ did not find Plaintiff's statements regarding the "intensity, persistence, and limiting effects," credible. R. 23–24. In order to comply with 20 C.F.R. § 404.1529(c), the ALJ must consider all relevant medical opinions when determining Plaintiff's credibility. As outlined in detail above, the ALJ failed to comply with the Commissioner's regulations with regard to the medical opinions of treating physician Dr. Capicotto and consultative examiner Dr. Toor, which incorrectly led the ALJ to conclude Plaintiff was "not entirely credible." R. 24. Therefore, the Court concludes the ALJ's credibility assessment does not comply with 20. C.F.R. § 404.1529.

An ALJ's use of the Internet to determine the credibility of a claimant is governed by the Social Security Administration's rules of Internet usage set forth in Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-5-69, which states in relevant part as follows: An ALJ, "must not use information from Internet sites and social media networks when determining disability, unless it has been corroborated by the CDIU[5] or was submitted by the claimant…. Further, an ALJ must not instigate an independent investigation to determine the validity of a statement made on the Internet." Hallex I-2-5-69 (B).

In the present case, the ALJ used the Internet to research the "website of the [Plaintiff's] tax preparation business." R. 27. The information led the ALJ to conclude that Plaintiff

---

[5] Cooperative Disability Investigations Unit.

was working during a period of disability, negatively impacting his creditability. *Id*. There is no evidence on the Record showing the website was corroborated by CDIU and Plaintiff did not submit the website or information contained on it as evidence. *Id*. Plaintiff was unaware that the website was still available, testifying, "It should have been shut down though because I didn't pay the renewal fees." R. 16. The Court concludes the ALJ's creditability assignment does not comply with the Commissioner's regulations regarding the use of the Internet.

## CONCLUSION

For all the foregoing reasons, the Court reverses the ALJ's decision and remands this case pursuant to sentence four of 42 U.S.C. § 405(g) for administrative proceedings consistent with this decision. Accordingly, Plaintiff's motion for summary judgment, [ECF No. 7](ECF No. 7), is granted. Defendant's cross-motion, [ECF No. 11](ECF No. 11), is denied.

DATED:    July 7, 2017
                Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge